Hear ye, hear ye, hear ye. This Honorable McCulloch Cork from the 2nd Judicial District is now back in session for a suit to adjourn. The Honorable Michael J. Park, beside him. Please be seated. Mr. Harris, you may proceed. Good morning, Your Honors. May it please the Court, Counsel, I'm David Harris, Assistant Appellate Defender, on behalf of Philip Merritt. Philip Merritt was deprived of the fully formed right to represent himself when he was forced to proceed to trial on the same day he was allowed to go pro se. And this happened through no fault of his own. He had sought to replace his attorney first a couple months earlier, but the Court refused to address that request until just days before trial. When the Court finally denied his request for a new attorney, he promptly filed a motion to reconsider or an alternative to go pro se. When the motion to reconsider was denied on the morning of trial, he was then allowed to go pro se. But the Court wouldn't even entertain the request for a continuance and forced him to begin trial that day, selecting his jury that afternoon and beginning with the evidence the following morning. Yes. Yes. And the Court allowed him to proceed pro se, but he also appointed Mr. Green to serve as a standby counsel. Yes, he had the public defender as a standby counsel. Who assisted him throughout the trial, correct? He did assist him, and I think that actually shows that he wasn't able to fully exercise his right to self-representation, that he had to rely to such a heavy extent on the attorney. He did not want representing him in the first place. He didn't have enough time to prepare, and he had to frequently ask questions and take breaks to talk with the standby counsel. Forcing him to go to trial under these circumstances without proper consideration of his continuance request should result in a new trial, but we're not even asking for that at this point. Which of the blocker factors do you think the Court failed to focus on? All of them. I don't think the Court – there's nothing in the record that shows the Court considered any factor. The Court, just like the trial court in Walker, thought this was merely a cheap delay tactic. Right. Well, the Court knew that the defendant had been asking for a new counsel to be appointed, correct? Yes. Well before the trial date. Yeah. Months. Yeah, about two months. And the Court didn't rule on that request. In our review, can we look at the entire record? I think you can. The case was 18 months old. Several witnesses had been subpoenaed. The people were ready, correct? The case, I believe it was an October indictment. They were now about 18 months. Yeah, when he began his request to replace his attorney, it had been a little over a year, 15 months maybe. The Court didn't consider the history of the case and whether there was any pattern of delay, which there wasn't here. The Court didn't consider, well, refused to listen to his plea that he had been diligent, that he had sought to do this months earlier to start this process. The Court didn't ask if he needed, how long he needed, whether it was a reasonable short continuance or if he was going to ask for something unreasonable, just like in Walker, the trial court was criticized for not asking how long the defense needed. The Court didn't consider the convenience or inconvenience to the State. The Court didn't ask the prosecutor whether a brief continuance would be an inconvenience to them or their witnesses. Did the Court make any findings of that? Specifically? No, I don't believe so. I think the Court's only finding of fact was that it thought this was a ruse to delay the trial. It said you're not going to get away with this. You're not going to go pro se just to delay the proceedings. And it's clear this wasn't just to delay the proceedings. He sought to do this month earlier on the first court date after he finally reviewed the case. You're saying he sought to do this months earlier and he started this process months earlier, but let's focus in on the pro se aspect. He wanted to remove his attorney a long time before that, but he never mentioned going pro se until the motion to reconsider. Right, and he's never confronted with that. He never has to face that decision until he learns he's not allowed another attorney. He first sought to replace his attorney. He didn't think his attorney was going to be able to give the appropriate attention to his case. After finally reviewing significant evidence the previous October at the next court date, he said, I need a new attorney. And the Court said that it wouldn't consider that motion. It takes motions in order to file. And that delay led to just a few days before trial, and the Court finally took it up. He then quickly turned around with a motion to reconsider or an alternative to go pro se. So I don't think he needs to be forced into a situation where his first choice is to go pro se. His first choice was a new attorney. Once that was denied, which was this two-month delay caused by the Court, he then asked to go pro se. Did the trial court have to allow him to go pro se on that day that he made that motion? It did not. So then why does Walker even apply? I mean, if you're standing there, the defendant's there, he's got his attorney, the attorney's ready to go. The attorney, the Court has made findings that the attorney is not ineffective. And so you look at the defendant and say, you've got an attorney, your attorney's ready to go, the case is set for trial today. If you want to go pro se, God bless you, but you're going to trial today. Why does Walker even apply in that situation? Well, Walker applies to requests for continuances. I think it applies whether it's counsel or not. Had the Court denied that and had him go to trial with the attorney he didn't want, then we'd be examining whether that ruling was appropriate. What was the case against the defendant particularly complex? Was it complex? Yes. That's another factor the Court failed to consider. He was facing, I believe, eight civilian witnesses, a lot of other crimes evidence. And the other crimes evidence had been ruled on. There had been hearings. The defendant was present for all of those hearings, correct? And the trial court, which was the subject of the first appeal. Right. The defendant was present for all of that. So he heard the evidence the State was going to present against him in the form of argument. Right. And there are motions and arguments on which the facts need to be granted. These are all things that are in the record that the trial court was aware of, correct? I presume the trial court would be aware of it. In your brief, you don't point out what could have been done or what would have been done in order to prepare for trial had the Court granted a continuance. What could have been done? Because there's nothing in your brief. Well, I mean, that type of counterfactual is hard to draw out. That's one reason that remanding for further proceedings in an evidentiary hearing could draw out what could have been done. But I don't think that's even necessary. Don't you need to do more than state a mere conclusion in order to get relief? Yes. Well, one thing that could have been done is he would have been able to go to trial without staying up all night reviewing discovery because he had one night to prepare after pitting his jury. He had to represent himself on no sleep in this situation because the Court wouldn't consider even how long he needed to prepare. He had reviewed discovery at least to his attorney on at least six prior occasions, correct? We don't know exactly what they reviewed. We know they reviewed the videotape evidence that ended up not being used by the state. But, again, this would be what discovery counsel may have thought was relevant, not merit representing himself being able to possess and go through all the discovery to see what he could find to prepare for cross-examination. He didn't get that until the day he had to start trial. He received discovery just like in Jefferson. Would he have done a better job? What would he have done differently had he had two weeks? I don't think that's possible to answer. He would have been— Well, I mean, it is in certain cases. You had Jefferson, I think it was Jefferson, where the attorney didn't, what, object and didn't cross-examine and gave a cursory opening statement. Yeah, I don't think Mr. Merritt needs to sandbag his case in order to validate the error he's complaining of. He did his best. He tried to cross-examine witnesses. He made arguments. I think in Walker and in Jefferson, the attorneys did some limited cross-examination. But just like the attorney in Jefferson, Merritt received discovery the day he had to be on trial, and then he stayed up all night. And we don't—there's just—there's very little way to tell what could have been— what questions could have been asked differently if he had a few more days to review discovery if he had been rested instead of staying up all night trying to cram through discovery that he'd been given the morning of trial. And I think— Well, hindsight's 20-20, as you mentioned. However, you have the record in preparing the briefs. You could have pointed out specifics in the record where oversights could have been cured by giving a continuance, correct? Well, I don't have discovery. I don't know what could have been done differently. You have the record. I have the record, yes. Yes. So I can see the questions. So you understand the point. I understand the point. I understand the point. But in Walker, the Supreme Court looked to what counsel did and some of counsel's failures, but ultimately held this was— that was a direct appeal, held it was plain error and that second problem, the serious error problem, plain error, doesn't give consideration to the weight of the evidence because it looks at the seriousness of the error, and the error here is the same, and that Walker somehow under trying circumstances— or that Merritt somehow under these trying circumstances was able to ask more questions than the attorney in Walker. I don't think forecloses his claim, at least not at the first stage of post-conviction proceedings where we're just asking that this is— that the court find this is arguable, that it's not rebutted by the record, and that it's not based on an indisputably Merritt-less legal theory, and it's not rebutted by the record. The record shows it was the court's rigidness in considering motions in the order that are filed and not addressing this that caused it to be resolved on the morning of trial. And it was the court's— And your position is that the appellate plenary should have at least raised that in the initial appeal? Absolutely. Yes. And it's also not based on a Merritt-less legal theory that Walker and Jefferson supported. Had the state found and came forward with cases that would foreclose this type of argument, we could be arguing whether the mere existence of a debate makes it arguable. The state didn't even do that. All they've done is distinguished cases that support Merritt on their facts. And when you have to comb through cases to distinguish them on their facts, I think that is an implicit concession that this is an arguable claim. If there are no further questions about this issue, I'd like to address the sentencing issue where the court imposed a discretionary consecutive term of 30 years in the second case consecutive to the first case explicitly for a reason that is not allowed by statute for deterrence. The statute allows consecutive sentences only where the sentencing court is of the opinion that consecutive terms are necessary to protect the public from the defendant. And here the court said that consecutive sentences are necessary instead. The court was of the opinion that he was a changed and repentant man and that consecutive sentences were necessary to send a message to the community that crimes aren't cheaper by the dozen, that you can't do multiple crimes and get one sentence. That's an explicit deterrence basis for consecutive terms that is not authorized by statute. And I think the error is clear. The state has raised procedural bars that this is barbed wire, that's judicata, and I don't believe rest judicata applies here when it wasn't actually litigated by the parties on direct appeal. Well, I mean, I'm looking at the prior appeal and the way we characterize the issue. The defendant contends that the imposition of the consecutive sentence was an abuse of discretion. The argument is that as a practical matter, the court imposed the life sentence relying on its personal perception of problems in the community, meaning deterrence, meaning that we have a crime problem in our community and we have to solve it by a big sentence here. Basically, that's what the defendant was arguing. And we said we didn't buy that argument and basically said that the trial court, in fact, looked at the likelihood to reoffend and made an appropriate finding. So how does that match? Well, I think the defense brief on appeal didn't even cite the statute about eligibility and argued various generic aggravation of mitigation factors, such as age and health and whether this caused serious harm, and asked for a reduction of the sentence or concurrent sentences, but didn't argue that he was statutorily ineligible. That wasn't presented to this court. The state managed to actually cite the correct statute and state the standard, but also argued these factors about age and the seriousness of the crime. And then, yes, this court's summary order did cite the statute and find that consecutive sentences were appropriate, but the argument just was not litigated by the parties and presented to this court. Well, did the defendant present it to the trial court in his post-conviction petition? He argued that consecutive sentences were improper, but not for the basis I'm arguing today. Why didn't he want that issue forfeited? Because we rely on fact-based pleading for post-conviction petitions at the first stage. He doesn't even have to cite statute or case law. He just needs to cite the facts. The fact he cited was consecutive sentences were improper. It's up to attorneys, either appointed at the second stage or later on appeal, to shape that into proper legal form. So I think he satisfied the low threshold at the first stage for fact-based pleading. And it's clear he was statutorily ineligible based on the court's comments. This wasn't presented to the court before, so the prior decision does not bar this issue. And even if this court is of the opinion that it might fit into this res judicata or a law of the case, those can always be bypassed in the interest of fundamental fairness. And Mr. Merritt will be spending the rest of his life until he's 87 in prison for a sentence that we know violates the consecutive sentencing statute, even with, say, a four-day credit. He'll be 87 when he gets out. So if he's going to die in prison, it doesn't make a difference. Even if they don't say we know it violates consecutive sentencing, we found otherwise. Without the benefit of the adversarial presentment of the issue. He was on parole. He had prior armed robberies. He had committed five other at least aggravated robberies. All right. Well, the statute requires the sentencing court to be of the opinion that it's necessary to present to the public. As the court pointed out, in the motion reconsidered, the court did make a finding that he was likely to be offended. But the court also, at the time of giving the sentence, did state he believed he's a changed and repentant man and explicitly said that this consecutive terms, or concurrent terms, would. . . We don't look just at the comments of the court at the sentencing. When there's a motion to reconsider, we consider everything the court said. Right. I think still taking the court's comments in total show that the court was focused on deterrence and may have tried. . . In the motion to reconsider, it was trying to clean up a mistake. But we know that the court is aware from the comments earlier that consecutive sentences were to send a message to the community that crimes aren't cheaper by the dozen. If there was a silent record, I think we can presume the court knows and is aware of the law and follows the law. But where the record explicitly rebuts that, I think we need to take the judge's comments at face value that this was for deterrence and to send a message to the community. Thank you. Thank you. We ask that you remain for the proceedings and correct the sentences to concurrent terms. And you will have time for rebuttal later. Thank you. Ms. Swish, you may proceed. Good morning, Your Honors and counsel. As for the first issue, talking about the underlying merits of this issue, not the forfeiture so much or whether or not it's ineffective assistance because obviously those all depend upon the underlying issue, the facts here contradict the legal theory. And that makes it indisputably meritless, and that means that it was properly summarily dismissed. The right to represent oneself is not absolute. This came on the day of trial. And, yes, the court, you know, what the defendant is relying on here is the fact that the ruling on his motion to have new counsel was postponed. And it was postponed. But within that framework, defendant still did not show diligence. And that was considered by the court. Now, this is not a Walker case. The court did not say that it was determining that there was bad faith here on the part of defendant. Yes, it cautioned defendant about that very matter, but that was to be expected. This is the day of trial. Also, the court knew the history of the defendant. The trial was first set on January 24th, and it wasn't until January 21st, three days before that on the final pretrial, that defendant came to the court and said that he wanted new counsel. So there was a history here of a lack of diligence. He didn't know that the trial wouldn't be going on January 24th. Now, as it so happened, the state also asked for a continuance because of needing to acquire the presence of a witness. Defense counsel didn't object to that, and eventually the court said, okay, we're going to grant this. But that was also a delay. That was the last minute. And yet his attorney told the court that he had talked with the basis for wanting a new attorney was that this attorney had not been diligent on his own case. He felt that this attorney had too many cases before him and wasn't paying enough attention. But the attorney represented that he had met with his client six to eight times. The record supports that. And that he was fully up to date on things and was prepared to try this case. The state didn't even object when the defendant asked for a continuance. You mean to proceed per se? Right. Yes, that is correct. That is correct. But the court relied on several of the factors. It weighed this. And we have to look at and determine whether there's an arguable issue. What harm would it have been to give the defendant a short date to review discovery? What harm would it have been? Well, the harm is, and this is what the court weighed, it looked at a lack of diligence because even on March 9th, the defendant obviously knew and did not ask to go per se. And the record shows he didn't even consider that or at least make up his mind until maybe the day of trial. The court just made a finding that it was a delay tactic. It didn't go through any real analysis, did it? Yes, it did go through an analysis because it did mention both that there was inconvenience to the witnesses who would be there. It also mentioned that it was managing its court docket and that this was on the day of trial. And it also looked at the defendant's diligence. And after a defendant said, and it did not make a Walker-type finding where it did not exercise its discretion. It made that warning to the defendant, if you will. And the defendant said to the court, I filed this a long time ago. And the court said, okay, I'm going to keep an open mind on this. I'd like to hear from you what your basis is. How is this not a Walker finding? If you try and fire him on the morning of trial, it would appear to the court that that is an attempt to gain a continuance to thwart the orderly administration of justice. This case is set for trial. The witnesses are subpoenaed. How is that not similar or the same as Walker? Because the court did go on to determine that once the defendant told him that he had already filed this, the court said, okay, I'm keeping an open mind. And then asked him to make the argument on it. So that's why it didn't. And then it did consider these other factors. It wasn't just saying no. What factors did the court consider and where? I mean, when did the court ask the state whether they were objecting, ask the state about their witnesses, whether they were there, who they were, whether they could come back? And when did the court go through the things that they talked about? Well, the court talked about the convenience of witnesses and its management of the docket, as well as a lack of diligence. But the lack of diligence is shown by the fact that even on March 9th, when this defendant knew that, well, I mean, he knew before March 9th that he might not be getting a new trial, or excuse me, a new counsel. So he knew for those six weeks that he might not be getting it, that this might not be successful. Then he comes in with no backup plan and knowing that the trial is five days away and waits that five days to present the motion. So between those factors, I think the court did weigh them. And it's only an abuse of discretion standard, which is obviously a deferential standard. So if the court weighed the factors and a reasonable person could have determined that this was too late, then there is no arguable basis in law. And there's our position. In this case, in fact, we have the complexity of the case. Now, that's something that the court did not mention, but it was all before the court. And this really turned out to be a one-day trial. Yes, there were a number of witnesses. There was no scientific evidence. And the witnesses, for the most part, were there because they also had faced a similar, you know, crime perpetrated by the defendant. They were there to provide for identification because the main witness in the Castle case did not identify a defendant. Previously she did at trial. But that's because he wasn't wearing glasses. They tied that up through the other witnesses. He was wearing the right types of glasses. So from all these factors, we suggest that it's clear on this record that the facts do not support this argument and, in fact, contradict it. And so a person can be denied the right to represent oneself when it's done on the eve of trial. That's under Woodson that I cited in my brief. And here it wasn't just that that was done, but we're looking to see if there's any prejudice. And there's no argument either in the defendant's post-trial – excuse me, post-conviction petition, nor in appellate counsel's argument on appeal that there really was a denial of this right that he had that resulted in prejudice. And that's what we're looking for if there's some type of due process violation. There's absolutely no statement of any type of prejudice. And that also means that there is not an arguable basis in law. And for that reason, we believe that the court, you know, properly, summarily dismissed on that first issue. But under Woodson, is a trial court authorized to deny continuance under these circumstances without going through the Walker family? I'm not sure, Your Honor. I don't believe – I believe that it would have to show some indication that it had considered, you know, and given the defendant a fair chance at, you know, in making his case for why he should have continuance at the last minute. So even though, as I ask counsel, you have a defense attorney who's there, who's not ineffective according to the trial court, who's ready that day, ready for trial, and the defendant wants to go pro se, the trial judge cannot mechanically deny the defendant's motion for continuance under those circumstances? Well, that's unclear to me. I don't believe – I believe the court would still want to consider. I mean, it just seems right to consider whether or not this is something that can be handled and handled well by the court and by everyone involved. At the same point, the fact that there is counsel there, counsel – and there's been no argument that that particular denial of new counsel was wrong. And so when you know that you have prepared counsel and there's no reason for the court to – or excuse me, for the defendant to have a basis, or he's certainly not stated a basis upon, which he should be able to – should have been able to get new counsel, well, then you're looking at a person – a defendant – again, you're looking at the prejudice. There is no prejudice. He's got counsel here that he can go with, counsel who's prepared. But he decided at the last minute that's certainly a consideration for the court and should be considered by the court, that this is not a case like Walker or some of the other cases where he's proceeding with an attorney who then needs the continuance to be prepared to present the case.  As to the second issue, I'm going to actually sort of skip through the procedural – the res judicata and all of the procedural defaults that I've argued in my brief, unless your honors have questions. But what it comes down to is this court did pass on this question, whether it's judicial dictum, whether it is res judicata, it doesn't really matter. The very facts that this court relied on on direct appeal to determine that consecutive sentences were appropriate are in the record still. And that's the basis upon which we say, again, our facts contradict their legal theory. That is that in this case, there's no magic words. The court did not have to – and that seems to be Devin's argument – that the court had to say that it was making a determination that it was necessary to protect the public from further criminal conduct by defendant and then elaborate as to why. Well, the court's initial comments do appear to be focused on deterrence. Absolutely. But that's a proper consideration. It doesn't mean that it didn't also make – For purposes of consecutive sentencing, the statute does require a finding that the sentence is necessary to protect the public from the defendant's future criminal acts. Absolutely. It needs to – as the statute reads, I believe, it needs to be in the opinion that that's necessary. It doesn't say that the court has to actually say those magic words, but then it has to put the basis for that opinion on the record. And it did here because the judge talked about how the defendant perpetrated a crime wave and how the circumstances were likely to recur. Those were his words. And that, in fact, this defendant had a long, significant criminal history. Those are all the facts which go to the basis, and that was part of what this court decided on direct appeal. And like I say, even if giving the defendant all of those things, those procedural defaults in which we believe should apply, even with that, we still have those facts, and those facts are on the record, and those facts are the facts which contradict this legal theory and mean that he does not have an arguable basis in law to proceed on this issue. And it's on that basis that we ask this court to affirm the summary dismissal. So that would be that the defendant was likely to reoffend, had a lengthy criminal history, was on parole, and contributed to this crime wave. Right. He committed six additional armed robberies. Are you saying that's sufficient? Yes. Yes, definitely. It shows that, in fact, he is a threat, you know, and that the finding that it's likely to recur shows that the people do have to be protected from this person who has done this incredible amount of crimes within a very short period of time after he's already had a significant history and is now on parole. The court found that he was eligible for extended term as well. Yes, it did. But the defendant did not impose extended term. That's correct. Yes. Thank you, Your Honor. Thank you, counsel. Mr. Harris, you want to argue? Your Honor asked what harm might have stemmed from granting a reasonable continuance, and we simply don't know. There's no harm apparent from the record because the court didn't make any sort of inquiry of the state whether this would harm their case or cause inconvenience. The court didn't ask. This was just a mechanical refusal to consider a request for continuance as in Walker, and as in Walker, it was an application of the trial court's duty to exercise discretion in ruling on this request. Well, the state had had a continuance in the past for trial in order to locate a witness, correct? Yes. So this time they were ready. They had five other armed robberies to prove up in their case in chief, civilian witnesses. Now they're ready. Isn't that a factor for the court to consider every once in a year and get this case to trial now? Perhaps it's a factor the court should have considered. The court simply said if you think you're going to continue trial just by going pro se, I'm not going to allow that. It's just this mechanical refusal to consider it. We don't know now that the state has witnesses whether a few days would have harmed them. The court knew when he was hearing the defendant's argument for continuance that the state, just because of what had taken place, the rulings that he had made, the state had a number of witnesses that they would need to assemble for trial, correct? Correct. Correct. And could have simply asked the prosecutor, would three days, would one week harm your ability to bring witnesses? The prosecutor likely would have said, Judge, can I have some time to speak to my civilian witnesses, find out if they have indications, any family events, illnesses, sicknesses? That would have been appropriate. That certainly would have been appropriate. And speculating that the answers would have been no, no, no, they can't go, doesn't foreclose the position that this is an arguable claim, arguable in law and in fact. And as for prejudice, the Jefferson case cited in the briefs, the court's discussion of prejudice simply looks at the fact that counsel received discovery on the day of trial, which is what happened here. There was no further analysis of what harm was done. It was just his inability to prepare was the harm. The defendant was denied his motion, the court denied the motion for a new attorney on March 9th or something, correct? Yes. And the defendant didn't raise any issue with that in his post-conviction petition. In his post-conviction petition, he argued that appellate counsel was ineffective for failing to raise the issues in the motion for new trial, which included the denial of continuance. I don't think it was the denial of a new attorney, no. He didn't say that that was an error.  So the first mention of, and when that was denied, he didn't inform the court, even though the trial date was a few days away, that, well, you're denying this, but I want to go pro se. Never mention that on the record. Not that day. He did in his written motion. He was denied on Wednesday. He was able to file that written motion for reconsideration or an alternative go pro se the following Monday. If he had mentioned that, then the trial court could have taken that up at that time and discussed all these issues of whether the trial would be continuing or not. The defendant chose to raise it in the motion, which wasn't going to be heard until the trial date. Sure. I mean, he chose to seek reconsideration. His first choice clearly was a new attorney. Do we know from this record if the defendant in his history had ever gone pro se in the past? Not that I'm aware of. We do know he had an extensive criminal history and was outlawed, correct? Absolutely, yes. So he had some familiarity with the criminal justice system. Oh, yes. Have we gone to trial or were all these dispositions by plea? I do not know, but I would imagine there were some of both just from the length of his history. When we get to the sentencing, the reasons about his long history and all these other factors are certainly a validation of giving him a long 30-year term, but they don't speak to the single statutory element that triggers consecutive sentences. Even if this court is of the opinion that it's necessary, the trial court is not of the opinion that it's necessary to protect the public from him until he is essentially dead and imprisoned at 87. The public will still be protected with concurrent terms until he's 72 years old. Even if they're 30-year concurrent terms, day for day, good conduct credit, he's getting out when he's 72. I think that error should be corrected. Thank you. Thank you, sir. We thank the attorneys for their argument today. The case will be taken under advisement. We'll take a short recess.